UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, ) | |
| United States Department of Labor ) | |
| ) | |
| Plaintiff ) | Case No. 6:10-CV-00115-GFVT |
| ) | |
| v. ) | |
| ) | |
| MANALAPAN MINING CO, INC. et al. ) | |
| ) | |
| Defendants ) | |
| ) | |

**RESPONSE IN OPPOSITION TO**
**MOTION FOR PRELIMINARY INJUNCTION**

The Defendants state as their response to the Plaintiff's Motion for Preliminary Injunction:

**I.  INTRODUCTION**

The Plaintiff (the "Secretary") has sued the Defendants, Manalapan Mining Company, Inc. ("Manalapan"); Left Fork Mining Company, Inc. ("Left Fork"); Benjamin Bennett; George Bennett; and David Partin, seeking injunctive relief under the Federal Mine Safety Health Act of 1977 (the "Mine Act"), Section 108(a), 30 U.S.C. Section 818(a).  The Secretary alleges that each Defendant violated the Mine Act by giving advance notice of mine inspections on April 19, 2010[1].

---

[1] Mr. Partin alone is accused of violating the Mine Act by displaying "hostility in his actions both at the mine and on the telephone with MSHA officials in relation to an ongoing inspection conducted under the Act." (Complaint, para. IX).  The Secretary's motion does not address this allegation.

The Complaint alleges violation of 29 U.S.C. Sections 218(a) and 218(b) (Complaint, para. VIII) by all the Defendants. This statute is actually part of the Fair Labor Standards Act. The Secretary appears to have intended to allege a violation 30 U.S.C. Sections 818(a) and 818(b), which state:

> **§ 818. Injunctions**
>
> (a) Civil action by Secretary
>
> **(1)** The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located or in which the operator of such mine has his principal office, whenever such operator or his agent--
>
> **(A)** violates or fails or refuses to comply with any order or decision issued under this chapter, or fails or refuses to comply with any order or decision, including a civil penalty assessment order, that is issued under this chapter,
>
> **(B)** interferes with, hinders, or delays the Secretary or his authorized representative, or the Secretary of Health and Human Services or his authorized representative, in carrying out the provisions of this chapter.

The Secretary now moves for a preliminary injunction to enjoin the Defendants from violating the Mine Act by giving advance notice of inspections. Her motion does not address her allegations regarding "hostility." Therefore, this response is limited to the accusations regarding advance notice.

## FACTS

Manalapan and Left Fork are coal mining companies. Benjamin Bennett is President of both companies. (Exh. 1, Affidavit of Benjamin Bennett.) George Bennett is Vice-President of both companies. (Exh. 2, Affidavit of George Bennett.) Mr. Partin is the Operations Manager for Manalapan, having overall supervision of all Manalapan's mines. (Exh. 3, Affidavit of David Partin.) Contrary to the Secretary's allegations, Left Fork is not a subsidiary of Manalapan. They

are separate corporations, sharing common officers and some common ownership. They are private, family-owned companies. (Exh. 1.)

Among Manalapan's mines is a mine known as the RB No. 12 Mine (the "Manalapan Mine") located in Harlan County, Kentucky. Left Fork operates a mine in Bell County, Kentucky, known as the Straight Creek No. 1 Mine (the "Left Fork Mine"). On April 19, 2010, both mines were subjected to "quality inspection" by the United States Department of Labor, Mine Safety and Health Administration ("MSHA"). This type of surprise inspection is known in the industry as a "blitz" inspection. The allegations in the Complaint all center around these two inspections.

During the blitz inspections, both mines were cited under 30 U.S.C. Section 813(a) for allegedly providing "advance notice" of the inspections. These citations are attached as Exhibit 4. These citations allege that miners underground were somehow notified of the inspections. The Complaint alleges that each Defendant permitted "notice of an inspection to be communicated from the surface operations of the mines to persons working underground." (Complaint Para. VIII.)

The Secretary has submitted a number of written statements from MSHA mine inspectors regarding this alleged notice. Here is her proof regarding the Manalapan Mine:

- Arthur ("Vince") Smith alleges that he overheard truck drivers on the mine haul road talking on CB radios about "inspectors being on the property." (Smith Declaration, p. 2.)

- Smith claims that he heard a miner (over the mine phone) say "two federal inspectors are out there" and "has anyone showed up yet?" He also claims that he heard someone underground say "Did our company show up?"

3

The Secretary has not submitted any proof that anyone on the surface of the Manalapan mine called underground.  Neither Benjamin Bennett, George Bennett nor David Partin notified anyone underground.  Likewise, there is no proof that anyone who was ordered not to give notice violated such an order.

The Secretary's proof regarding the Left Fork Mine is equally tenuous:

- Inspector Robert Barnes claims that he heard someone underground say, "Shut the belts off, there is six inspectors outside." (Barnes Declaration, p. 3.)

- Inspector Clayton "Eddie" Sparks claims that he was told by Barnes that Barnes heard someone underground say, "Shut the belts off, there is six inspectors outside." (Sparks Declaration, p. 2.)

- Sparks admits that "I am not certain who gave the information stated on April 19, 2010 based on voice identification." (Sparks Declaration, p. 2.)

These statements are the sum proof of the evidence offered to support the Secretary's motion.

Neither Benjamin Bennett, George Bennett nor Mr. Partin had any involvement in any alleged "advance" notice.  George Bennett was in his car driving back from Chattanooga, Tennessee at the time of the inspections.  (Exh. 2.)  Benjamin Bennett was in his office in Pineville, Kentucky, when he learned of the inspections.  (Exh. 1.)  The inspections were already underway when they learned of them.  Likewise, Mr. Partin did not even find out about the inspections until the inspectors were already on the mine property.  (Exh. 3.)  None of these individuals could have given advance notice.  There is simply no reason for them to have been named as Defendants.

The mine phones are not public telephones.  (Exh. 1.)  The phone lines run from the surface to the underground and throughout the mine.  (Exh. 1.)  Neither of the Bennetts even had

4

access to mine phones on the morning of April 19. (Exhs. 1 and 2.) Mr. Partin was not even aware of the inspection until they were well underway. (Exh. 3.) Whatever happened on the mine properties that morning was independent of these gentlemen.

As to the corporate Defendants, Manalapan and Left Fork, all the Secretary can establish is someone working underground <u>may</u> have known that the inspectors were on the property. There is no proof that anyone called underground or that anyone in management for either company provided advance notice. Mr. Smith admits that the miners may have overheard CB radio conversations at the Manalapan Mine. Mr. Sparks cannot identify the voice he allegedly heard on the mine phone at the Left Fork Mine. Most importantly, there is no proof that these violations will occur in the future. These allegations fall far short of the type of proof necessary to support injunctive relief.

## II.     ARGUMENT

### A.     There is No Likelihood of Success on the Merits Against the Individual Defendants.

In ruling on the Secretary's motion, this Court must determine: "(1) whether [she] has a strong likelihood of success on the merits; (2) whether [she] will suffer irreparable injury without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction." *Tumblebus v. Cramer,* 399 F.3d 754, 760 (6th Cir. 2005) (citations omitted). The first factor, the likelihood of success on the merits, is a factual issue that must be determined on a case-by-case basis. The movant carries the burden of proving success on the merits. "A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries its burden of proving that the circumstances clearly demand it." *Donaldson v. United States*, 109 Fed. Appx. 37, 41 (6th Cir. 2004) (citing *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000)).

Because the Secretary has chosen to sue Messrs. Bennett and Partin, the Defendants will first address the likelihood of success on the merits against these Defendants. The Secretary has no claim whatsoever against these individuals.

The Secretary alleges violation of Section 103(a) of the Mine Act, 30 U.S.C. Section 813(a), which provides that "no advance notice of an inspection shall be given to any person…." In order to show even remote possibility of success against the Bennetts or Mr. Partin, the Secretary must show some proof to hold these individuals personally liable, apart from their role as officers or employees of the corporations.

None of the individuals were personally cited for violating the statute. Under Section 110(c) of the Mine Act, 30 U.S.C. Section 820(c), the Secretary may cite individuals under certain limited circumstances:

> Whenever a corporate operator violates a mandatory health or safety standard or knowingly violates or fails or refuses to comply with any order issued under this Act or any order incorporated under a final decision under this Act…any director, officer or agent of such corporation who knowingly authorized, ordered or carried out such violation, failure or refusal shall be subject to the same civil penalties, fines and imprisonment that may be imposed upon a person under subsections (a) and (d).

If the Secretary genuinely believed that the Bennetts or Mr. Partin were personally responsible, the inspectors could have issued citations against them.

Individual corporate agents can only be personally liable if they "knowingly authorized, ordered or carried out [a] violation" of a mandatory standard. 30 U.S.C. Section 820(c). The term "knowingly" is defined to include both actual knowledge and constructive knowledge. The Federal Mine Safety and Health Review Commission has also held that liability under Section 110(c) requires aggravated conduct rather than mere ordinary negligence. *See Freeman United Coal Mining Co. v. FMSHRC,* 108 F.3d 358, 360 (D.C. Cir. 1997) [concluding that a finding of

6

high negligence cannot support a finding of liability under Section 110(c)]. To establish liability under Section 110(c), the Secretary must prove that the individual knew or had reason to know of the violative condition. *Freeman*, 108 F.3d at 364; *Secretary v. Target Industries, Inc.,* 23 FMSHRC 945, 963 (Sept. 2001). Benjamin and George Bennett were many miles away from both mines at the time of the inspections. Mr. Partin was closer to the mine, but it is undisputed that he did not know of the inspections until they had already begun. It is impossible to connect any of these men with the Secretary's allegations of advance notice.

The Secretary's effort to impose personal liability upon Messrs. Bennett and Partin fails for the following reasons:

- There is no proof that any of them provided advance notice.

- There is no proof that any of the individual Defendants knowingly authorized, ordered or carried out a violation.

- By the Secretary's own admission, she does not know how anyone underground knew of the inspections.

- There is no allegation of aggravated conduct.

- The affidavits of the Bennetts and Mr. Partin prove beyond any doubt that they played no role in any alleged violations.

- None of them have been cited for a violation.

There is no basis for claims against these individuals. Moreover, as corporate officers and employees, they are bound by any injunction under F.R.C.P. 65(d)(2). The Secretary's claims are simply an effort to defame these individuals and damage their reputations. All claims against them should be dismissed.

**B.     The Secretary Cannot Establish Repeated or Habitual Violations of The Mine Act Nor Does She Allege That Future Harm is Likely; Thus, The Court Cannot Grant Injunctive Relief.**

The Secretary's Complaint is a pre-enforcement action as she seeks to enjoin future violations of the law. The Citations were issued on April 19, 2010 and have been contested before the Federal Mine Safety and Health Review Commission (the "Commission) by Manalapan and Left Fork. Despite the Secretary's contentions, the Mine Act does not authorize pre-enforcement injunctive relief for a single alleged violation of the law. The Secretary's ability to seek such pre-enforcement injunctive relief is limited.

In *Thunder Basin Coal Company v. Reich,* 510 U.S. 200 (1994), a coal operator sought pre-enforcement review in the District Court of an MSHA order requiring the operator to post designation of a miners' representative to exercise walk around rights during mine inspections. The United States Supreme Court held that the Secretary could only bring such a pre-enforcement action under limited circumstances:

> The Act expressly authorizes district court jurisdiction in only two provisions, §§ 818(a) and 820(j), which respectively empower the *Secretary* to enjoin habitual violations of health and safety standards and to coerce payment of civil penalties. (emphasis in original).

Thus, to obtain injunctive relief in this case, the Secretary must prove habitual violation of the cited statute. In other words, repeated violations must be shown. There is no history of such violations at either mine. The Supreme Court has spoken on this issue. The Secretary is not entitled to pre-enforcement injunctive relief under the circumstances alleged in her Complaint and motion.

The Secretary's limited right to sue for pre-enforcement relief does not authorize her to seek adjudication in this Court of a violation of the Mine Act. The Commission has exclusive jurisdiction to rule on the violations alleged against Manalapan and Left Fork. The

Commission's ruling may only be reviewed by the United States Court of Appeals. 30 U.S.C. Section 816. Both companies have contested the violations. There can be no determination of liability until the Commission hears these cases.

Even if the Secretary could prevail on those claims before the Commission, the standard for injunctive relief for future wrongs is strict. In other contexts, courts have rejected injunctive relief for speculative future harm. To obtain injunctive relief, the claimant must show more than "past harm or speculative future harm." *See e.g., Lippoldt v. Cole*, 468 F.3d 1204, 1217 (6th Cir. 2006) (citation omitted). The Secretary does not cite a single case allowing the Government to obtain injunctive relief against an operator for an alleged single violation of the law.

Unless the Secretary can establish future harm, she does not even have standing to invoke the Court's equitable powers. Standing is a threshold issue in every federal case. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) [citing *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)]. In order to satisfy the standing requirement for this type of claim, the Sixth Circuit has held that a plaintiff:

> (1) must have suffered some actual or threatened injury due to the alleged illegal conduct (the "injury in fact element"); (2) the injury must be fairly traceable to the challenged action (the "causation element"); and (3) there must be a substantial likelihood that the relief requested will redress or prevent [the plaintiff's] injury (the "redressability element"). *Id.*

When injunctive relief is sought, a pre-enforcement challenge may be made before the actual completion of an injury in fact. *Id.* (citing *Nat'l Rifle Assoc. of Am. V. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). However, a plaintiff "must show actual present harm or a significant possibility of future harm" in order to demonstrate the need for a pre-enforcement injunction. *Id.*

Stated differently, **"where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief."** *Id.* at 833 (citing *City of Los Angeles v. Lyons*, 461 U.S.

9

95, 109, 103 S.Ct. 1660 (1983). Similarly, an injunction will not be issued if the threat of a future injury "is highly conjectural, resting on a string of actions the occurrence of which is merely speculative." *Id.* at 833.

Applying the above to the present case, it is clear that the Secretary has no standing to seek a preliminary injunction against any of the Defendants. She is unable to demonstrate the need for this pre-enforcement injunctive relief as there is no showing of a present violation, much less a significant possibility of future violations. Rather, since any threat of future violations by the Defendants is at best "speculative" and "tenuous," injunctive relief is not appropriate. *Id.* In fact, the Secretary terminated the violation at Left Fork after the employees were instructed not to give advance notice. (See Citation 8364003-1, Exh. 4.)

In addition to not establishing the injury in fact component of standing, the Secretary has also not shown that there is an issue that is ripe for judicial review in this case. The rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Rifle Assoc. of Am. V. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). A case is not ripe for judicial review when it "is anchored in future events that may not occur as anticipated, or at all." *Id.* (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 200-01, 103 S.Ct. 1713, 1720-21 (1983)). The Sixth Circuit has held that, in evaluating ripeness, a court "must consider whether the case is fit for judicial resolution at the pre-enforcement stage, which requires a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." Id. (citations omitted).

In the present case, the Secretary has not set forth a sufficient factual record of the merits of her case. Rather, since her claim for injunctive relief "is anchored in future events" that have

not been shown likely to occur, this case is not ripe for judicial review. *Nat'l Rifle Assoc.*, 132 F.3d at 284 (citations omitted). There has been no evidence presented at this stage to establish any chance of future harm.

In her motion, the Secretary cites no law to support her contention that injunction relief is appropriate. She relies upon *Secretary v. Topper Coal Co., Inc.,* 1998 WL 210949 (1998), to support her claim. In that case, the president of the coal company *admitted* that he called underground and told the miners that inspectors were coming into the mine. He claimed that he did this not to give advance notice, but as a safety precaution. The issues before the Commission were whether this constituted notice, and to determine the gravity of the violation. In the instant case, the Secretary does not even know who – if any one - gave the alleged notice. The Defendants do not contend that the Mine Act allows advance notice of an inspection.

In the few instances where injunctive relief has been granted under the Mine Act over interference with inspections, it has been <u>after</u> enforcement proceedings have concluded—not at the preliminary injunction stage. For example, in *Chao v. Darwin Stratton & Son, Inc.,* 79 Fed. Appx., 2003 WL 2237613 (10th Cir. 2003), the District Court granted the Secretary an injunction based upon the operator's refusal to allow access to its gravel mines. The operator contended that the Secretary had no jurisdiction over the mines and, thus, could not inspect them. The operator failed to appear at the administrative hearing before the Commission. As a result, the Administrative Law Judge ruled that access to the mines had been denied. The Court of Appeals for the Tenth Circuit affirmed the ruling based upon the findings that (1) the operator denied access; and (2) this denial was likely to continue in the future. In this case, the Secretary can only show that someone was overheard on the mine phone talking about inspectors. No one contends that the Manalapan or Left Fork Mines cannot be inspected, nor is there any contention

that the Defendants intend to give advance notice of inspections in the future. There is absolutely no proof that this situation will continue in the future.

It is also extremely doubtful that the Secretary can establish even a single violation of Section 103(a). There are no cases interpreting "advance notice" under the Mine Act. The *Topper Coal* case cited by the Secretary involves a situation where the operator admitted that its President told the miners of the inspection. Similarly, in *Darwin Stratton & Son, Inc.*, supra, the operator admitted that it denied access to the inspectors because the operator believed that MSHA lacked jurisdiction over the gravel mines. Another example is *Secretary v. Cougar Coal Company*, 17 FMSHRC 628 (1995), where the mine superintendent admittedly told the section foreman, via mine phone, that there were MSHA inspectors ready to go underground. In that case, the Secretary prevailed in her argument that this notice denied the right of access to the mine under Section 103(a) of the Mine Act. No such facts are present here. To the contrary, in this case the Secretary's witnesses all admit they do not know who told miners underground about the inspection.

A common sense interpretation of the law requires more than to just establish that miners underground *knew* that inspectors were on the property. They may have heard it on CB radios. Someone may have seen the inspectors on the property and then travelled underground. Someone may have called underground on a mine phone. The MSHA inspectors simply do not know.

Here, each mine has been cited *once*—on April 19, 2010—for giving advance notice of inspection. The Defendants deny these allegations. Even if the Secretary could prevail on these claims, they does not rise to the level of habitual violations, as required under *Thunder Basin*,

12

nor do they support any inference that such violations will occur in the future. Thus, there is no controversy for the Court to resolve.

### C. The Public Interest Will Not Be Served by Issuance of an Injunction

The Secretary contends that the public interest is served by issuance of a preliminary injunction because "[s]afety in mining not only benefits the miners who work underground but also… allows for the uninterrupted flow of commerce." The injunction urged by the Secretary advances neither goal.

There is no proof that Manalapan or Left Fork intend to violate the law in the future. This is not a case where an operator has denied access to the mine or contends that it may give advance notice of inspections. Under the present circumstances, an injunction does nothing to increase safety in the mines.

If the Court grants this injunction, it can well be expected that the Secretary will seek injunctive relief against any mine with a citation pending before the Commission at any time. Under the Secretary's argument, injunctive relief is always justified. Every time a complaint such as the instant one is filed, great resources are required to defend the allegations. The Court's docket will be full of cases which should rightfully be before the Commission. Such pre-enforcement abuse of injunctions is *not* in the public interest.

### D. A Preliminary Injunction Will Cause Substantial Harm to the Defendants

The Secretary contends that an injunction will cause no harm to the Defendants. This is not true. The individuals sued—Benjamin Bennett, George Bennett and David Partin—face the substantial likelihood of being vilified in the media when none of them have any personal liability. In addition, both companies have had inquiries regarding this suit from their vendors, jeopardizing those relationships. (Exh. 1.)

Since the filing of the Complaint, MSHA has launched a media blitz regarding this case. This suit has been reported in at least the following:

- MSHA's website - http://www.msha.gov/MEDIA/PRESS/2010/NR100506.asp.  A copy of this press release is attached as Exhibit 5.

- *The Wall Street Journal*, May 6, 2010 ("Mine Safety Sweep Yields Citations, Closures")

- *The Lexington Herald-Leader*, April 29, 2010 ("Feds Seek to Halt Warnings by Mines of Inspectors Arrival")

- *The Louisville Courier Journal*, April 28, 2010 ("Judge Asked to Bar Mines from Warning of Inspections"); May 7, 2010 ("Safety Violations at 6 Ky. Mines Draw Shutdown Orders")

- *The Charleston (West Virginia) Gazette*, May 6, 2010 ("MSHA Finds Hundreds of Violations in Inspection Sweep")

Any ruling favorable to the Secretary by this Court will be likewise publicized.  The damage to all the Defendants is immeasurable, especially when a trial on the merits is many months away.

Also, if an injunction issues, the Defendants may be subject to contempt for future alleged violations.  If any inspector even accuses the Defendants of a violation, the Secretary will no doubt return to this Court seeking relief.  The Defendants will then be forced to defend themselves in this forum while simultaneously seeking review before the Commission.

## III.    CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court deny the Secretary's Motion for Preliminary Injunction.

        *s/John M. Williams*__________________
John M. Williams
Marco M. Rajkovich, Jr.
Rajkovich, Williams, Kilpatrick
& True, PLLC
2333 Alumni Park Plaza, Suite 310
Lexington, Kentucky 40517
Telephone: (859) 245-1059
Facsimile: (859) 245-1231
williams@rwktlaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

This certifies that a true copy of the foregoing was served upon all counsel of record through the court's electronic filing system on this 12th day of May, 2010.

*s/John M. Williams*____
John M. Williams