UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

HILDA SOLIS, Secretary of Labor, United   )
States Department of Labor,   )
   )
      Plaintiff,   )      Civil No. 10-115-GFVT
   )
V.   )
   )
MANALAPAN MINING CO., INC.,   )      **MEMORANDUM OPINION**
ET AL.,   )      **AND ORDER**
   )
      Defendants.   )

*** *** *** ***

This matter is currently before the Court on the Motion for Preliminary Injunction [R. 2] filed by the Secretary of Labor. The Secretary alleges that the named Defendants violated the Federal Mine Safety and Health Act of 1977 by providing advance notice of mine inspections on April 19, 2010, and seeks to enjoin them from providing similar notice in the future. The Defendants filed a response in opposition. [R. 11.] On May 14, 2010, the Court conducted a hearing on this motion and heard testimony from witnesses and argument from the parties. For the reasons set forth below, the Court will grant the Secretary's motion and issue a preliminary injunction.

**I.**

In the wake of the worst mining disaster[1] in recent history, the President of the United States mandated the inspection of many coal mines in the country and in this region. Two of

---

[1]Twenty-nine coal miners were killed in an explosion at the Upper Big Branch Mine in West Virginia on April 5, 2010.

those inspections occurred at the RB No. 12 Mine, located in Harlan County and operated by

Defendant Manalapan Mining Company, Inc., and the Straight Creek No. 1 Mine, located in Bell

County and operated by the Defendant Left Fork Mining Company, Inc.  Defendant Benjamin

Bennett is the President of both companies, while his brother, Defendant George Bennett, is the

Vice-President of both companies. [R. 11, Ex. 1 (Benjamin Bennett Aff.), Ex. 2 (George Bennett

Aff.).]  David Partin, the final Defendant, is the Operations Manager for Manalapan. [*Id.*, Ex. 3

(Partin Aff.).]  Although Manalapan and Left Fork share common officers and some common

ownership, they are legally distinct corporate entities. [R. 11, Exs. 1-2.]

On April 19, 2010, two separate groups of Mine Safety and Health Administration

("MSHA") inspectors performed quality inspections at the Manalapan and Left Fork mines.  [R.

2, Exs. 2-5.]  Upon arrival at each location, the inspectors identified themselves to the first mine

employees they encountered and informed those employees of the purpose of their visit.  [*Id.*]

They directed those employees not to provide any notice of their presence or the impending

inspections to the underground workers.  [*Id.*]  The inspectors then seized the mine phones[2] to

monitor any communications between the surface and underground.  [*Id.*]

At both mines, MSHA inspectors testified that they overhead statements on the seized

mine phones that establish that advance notice of the inspections was given.  Arthur "Vince"

Smith was one of the inspectors at the Manalapan Mine.  [R. 2, Ex. 4 (Smith Aff.).]  After giving

the order not to inform anyone of the inspectors' presence, Mr. Smith monitored the mine phones

---

[2]The mine phones are not public phones.  There are direct lines that run from the surface
to the underground and are located in various places on the surface and throughout the mines.
However, the lines operate like a party system that allows anyone who picks up a handset to hear
anything that is being said over any of the phones.

from the mine office. [*Id.*] He testified that, among other things, he overhead someone on the mine phone say, "There are two federal inspectors out there." [*Id.*]

Preston Jackson, another MSHA inspector, testified at the hearing about a conversation he overhead at the Left Fork Mine. While monitoring the mine phones there, Mr. Jackson stated that he heard someone call out, "Hello, underground?; Hello, underground?" After someone answered, "Underground," the original speaker said, "Shut all the belts off." When asked why, that person said, "Because there are six federal mine inspectors on the property."

Both mines were cited for providing "advance notice" of the inspections in violation of 30 U.S.C. § 813(a). [R. 11, Ex. 4.] Shortly thereafter, the Secretary filed the instant action seeking a preliminary injunction against the Defendants. The Defendants filed an answer to the complaint and a response in opposition to the motion for preliminary injunction. The Court conducted a hearing on that motion on May 14, 2010. Following the hearing, the Secretary submitted a supplemental memorandum. This opinion follows.

## II.

Congress adopted the Mine Act "to protect the health and safety of the Nation's coal or other miners." 30 U.S.C. § 801(g). The Act requires the Secretary of Labor or her representatives to conduct, periodic, unannounced health and safety inspections of the Nation's mines. Underground mines, like those operated by Manalapan and Left Fork, must be inspected at least four times per year with respect to imminent danger and compliance determinations. *Id.* § 813(a). In carrying out these requirements, the Act specifically directs that "no advance notice of an inspection shall be provided to any person . . . ." *Id.* Further, it is beyond dispute, and the Defendants conceded on the record, that providing advance notice does interfere with, hinder, or

delay the Secretary, or her authorized representatives, in carrying out the relevant provisions of the Mine Act. *See* 30 U.S.C. § 818(a)(1)(B); *Sec'y of Labor v. Topper Coal Co., Inc.*, 1998 WL 210949 (F.M.S.H.R.C. April 30, 1998).

It is necessary, at the outset, to address two arguments raised by the Defendants. These arguments essentially challenge the Secretary's standing and this Court's jurisdiction. The plain language of the Mine Act, however, refutes both of the Defendants' arguments.

According to the Defendants, unless the Secretary can establish some future harm, she does not even have standing to invoke the Court's equitable powers. The Defendants correctly note that standing is a threshold issue in every federal case. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)). However, the other cases cited by the Defendants overlook the fact that Congress may create or convey standing by virtue of statutory enactment. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 559 (1992); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.")

Here, Congress has granted the Secretary of Labor standing to pursue civil actions for several enumerated violations, listed in § 818(a)(1). That Section specifically authorizes the Secretary to "institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located . . . ." *Id.* Further, Subsection (B), one of the enumerated violations, permits the Secretary to file a civil action whenever such operator or his agent "interferes with, hinders, or delays the Secretary or his authorized representative . . . in

carrying out the provisions of this chapter."  30 U.S.C. § 818(a)(1)(B).  This language plainly

demonstrates that Congress conveyed standing to the Secretary of Labor to bring this type of

action in this Court.

The Defendants also argue that the Mine Act only confers federal jurisdiction in cases

involving "habitual offenders of the regulatory scheme of the Act."  [R. 11 at 8 (quoting *Thunder*

*Basin Coal Co. v. Reich*, 510 U.S. 200, 209 (1994).]  They assert that the Federal Mine Safety

and Health Review Commission (the "Commission") has exclusive jurisdiction to rule on the

violations alleged against Manalapan and Left Fork.  Absent repeated violations, the Defendants

contend that pre-enforcement injunctive relief is unavailable.

To be sure, the Mine Act confers federal jurisdiction when the Secretary believes that a

mine operator "is engaged in a pattern of violation of the mandatory health or safety standards"

of the Act.  30 U.S.C. § 818(a)(2).  However, the Defendants' argument ignores the significance

of section 818(a)(1), which provides for federal jurisdiction in many other cases, including when

a mine operator "interferes with, hinders, or delays the Secretary . . .  in carrying out the

provisions of this chapter."  *Id.* § 818(a)(1)(B).  The Supreme Court has recognized that the

Mine Act confers federal jurisdiction when any triggering event under section 818(a)(1) occurs.

*See Donovan v. Dewey*, 452 U.S. 594, 604-05 (1981) (addressing analogous but not identical

situation and stating that section 818(a) would confer federal jurisdiction when a mine operator

denies an MSHA inspector access to a facility).  As the Eighth Circuit has noted, "[i]nterpreting

the Mine Act to confer federal jurisdiction only when operators habitually violate the Act would

render section 818(a)(1) nugatory."  *Herman v. Assoc'd Elec. Coop.*, 172 F.3d 1078 (8th Cir.

1999).

Here, the Secretary has brought this action under 30 U.S.C. § 818(a)(1)(B). Pursuant to that Section, the Secretary may institute a civil action, including seeking a preliminary injunction as she has done here. The plain language of that section authorizes the Secretary to file suit without the need to establish repeated or habitual violations. Moreover, Section 818(b) expressly provides jurisdiction to district courts "to provide such relief as may be appropriate" in any action brought under § 818(a). 30 U.S.C. § 818(b). The Court is, therefore, satisfied that it has jurisdiction over the instant matter.

The Court must address one final matter before turning to the relevant factors for issuing a preliminary injunction. The Defendants contend that the Secretary has neither alleged nor presented evidence that the individually named Defendants, Benjamin and George Bennett, and David Partin, had any involvement in providing advance notice, or authorizing or ordering the same, in this case. Therefore, they argue that those Defendants should be dismissed. Upon review of the record, the Court agrees, but will permit the Secretary an opportunity to respond.

Under Section 110(c) of the Mine Act, the Secretary may cite individuals in certain circumstances:

> Whenever a corporate operator violates a mandatory health or safety standard or knowingly violates or fails or refuses to comply with any order issued under this Act or any order incorporated under a final decision under this Act . . . any director, officer or agent of such corporation who knowingly authorized, ordered or carried out such violation, failure or refusal shall be subject to the same civil penalties, fines and imprisonment that may be imposed upon a person under subsections (a) and (d).

30 U.S.C. § 820(c). Thus, this Section imposes personal liability on individual corporate agents only if they "knowingly authorized, ordered, or carried out [a] violation" of a mandatory health or safety standard or an order issued under the Act. According to the Review Commission,

6

liability under Section 110(c) requires aggravated conduct rather than ordinary negligence. *See Freeman United Coal Mining Co. v. FMSHRC*, 108 F.3d 358, 360 (D.C. Cir. 1997).

In this case, neither of the Bennetts nor Mr. Partin were cited for violating § 110(c). It is undisputed that the Bennetts were not present at either mine before or during the inspections. It is also undisputed that neither of the Bennetts had access to a mine phone. While David Partin was present at Manalapan, he did not arrive until after the inspection had begun. The Secretary does not allege that any of these three individuals provided advance notice of the inspections and the Defendants' sworn affidavits denying involvement remain uncontroverted. Further, there is no allegation or proof of aggravated conduct and no allegation or proof that either of the Bennetts or Mr. Partin knowingly authorized, ordered, or carried out a violation.

In response to questions at the hearing about the inclusion of the individually named Defendants, the Secretary pointed only to documents filed on behalf of these mines indicating that these individuals are responsible for the health and safety issues at those locations. Such a reason, however, fails to justify their presence in this action, particularly where these individual Defendants, as corporate officers and employees, would be bound by any injunction issued against Manalapan and Left Fork. Because no additional purpose is served by naming Benjamin Bennett, George Bennett, and David Partin, the Secretary shall show cause within fourteen days from the date of this Order as to why those individuals should not be dismissed. Thus, except as otherwise noted, the remainder of the Court's analysis will relate only to Manalapan Mining Company, Inc. and Left Fork Mining Company, Inc.

A preliminary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo between the parties pending a final determination of the merits of the action. To

determine whether the Secretary is entitled to a preliminary injunction, the Court must consider the following factors: "(1) whether [she] has a strong likelihood of success on the merits; (2) whether [she] will suffer irreparable injury without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction." *Tumblebus v. Cramer*, 399 F.3d 754, 760 (6th Cir. 2005) (citations omitted). These are factors to be balanced, not prerequisites that must be met. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citation omitted).

The Secretary has demonstrated a strong likelihood that she will succeed on the merits by establishing that Defendants Manalapan and Left Fork mines, and their employees and/or agents, provided advance notice of the April 19, 2010 inspections in violation of the Mine Act. Section 103(a) of the Mine Act provides that "no advance notice shall be given to any person . . . ." 30 U.S.C. § 813(a). At both mines, MSHA inspectors overheard conversations on the mine phones which established that underground workers knew that federal inspectors were on the property and about to conduct inspections prior to the actual underground inspections commencing. While the Secretary cannot identify the specific individuals who made the calls, it is clear that only mine employees or agents have access to mine phones, which are all located on mine property.

Shortly after arriving at Left Fork mine, MSHA inspector Preston Jackson picked up a mine phone and heard someone tell the underground workers to shut the belts off because there were six federal mine inspectors outside. At the hearing, it was established that the six inspectors at Left Fork were only in the same area for a very brief period of time before breaking off to separate parts of the property. It follows that whoever made that call must have been in a

position to view all six inspectors at the same time. Anyone else at the mine would have only seen or encountered one or two inspectors. Thus, the Secretary has a strong likelihood of establishing that an agent or employee of Left Fork mine provided advance notice of the April 19, 2010 inspection.

At the Manalapan mine, MSHA inspector Vince Smith listened to the mine phone located in the mine office. Mr. Smith testified that he heard three statements over the mine phone, including "two federal inspectors are out there," "has anyone showed up yet," and "did our company show up?" The latter two statements are ambiguous at best. While they could be construed as a euphemism for the inspectors, the Defendants offered the testimony of an underground worker who stated that he placed at least one of those calls and that he was asking about the company that services the underground carbon monoxide monitors. The first statement, however, specifically mentions federal inspectors. Such a statement establishes that someone underground was informed about the inspections before the inspectors made it underground.

It is true that Inspector Smith also stated that he overheard truck drivers on the mine haul road talking on CB radios about the inspectors being on the property. While they were en route to the mine, Smith stated that he heard truck drivers talking about four loads of inspectors coming in. At the mine office, however, he heard CB communications about two inspectors being on the property. The reason for this difference is that the inspectors, in an effort to conceal the presence for as long as possible, broke off into separate groups. Mr. Smith and one other inspector headed to Manalapan mine to make it appear that they were there only for a surface inspection. The other inspectors pulled off on a side road several miles away from the mine.

The fact that Mr. Smith overheard someone specifically state that there are two inspectors out there strongly suggests that advance notice was given. Otherwise, anyone who overheard the CB chatter would have received conflicting information – first that four loads of inspectors were coming in, and shortly thereafter, that two inspectors were on the property. Thus, while it is possible that someone underground overheard only part of the CB conversations, it does not seem probable under these facts. The Secretary has therefore demonstrated a strong likelihood of success on the merits concerning this violation.

The remaining three factors also weigh in favor of granting the requested injunction. The Secretary of Labor and those she seeks to protect will suffer irreparable harm without the issuance of the preliminary injunctive relief. Through the Mine Act, Congress charged the Federal Mine Safety and Health Administration with ensuring the health and safety of all miners, providing more effective means and measures for improving the working conditions and practices in the Nation's mines, preventing the death and serious physical harm to the miners, remedying unsafe and unhealthful conditions in the mines, and preventing mine accidents which unduly impeded and burden commerce. *See* 30 U.S.C. § 802(a)-(f). To comply with these objectives, MSHA must conduct meaningful inspections of the mines. That requires inspections of the conditions as they normally exist, which cannot occur when advance notice is provided to those working underground. The giving of advance notice prevents the discovery of safety and health violations and allows potential hazards to be concealed.

The issuance of an injunction will not cause substantial harm to the Defendants or others. The Defendants are already prohibited by the Mine Act from providing advance notice of inspections. *See* 30 U.S.C. § 803(a). This injunction will do nothing more. It will only require

the Defendants to comply with the law as written.  The Defendants control the mine phone communications between the surface and the underground mines.  Just like the Mine Act, the injunction will prohibit them providing advance notice of inspections.  The Defendants will suffer no harm by being enjoined from doing what the law already prohibits.

Finally, it is clear that the public interest is served by the granting of this injunction.  Congress has declared that the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource – the miner.  30 U.S.C. § 802(a).  The prohibition on providing advance notice of inspections is necessary to allow for meaningful inspections of mine conditions, which, in turn, allows the Secretary to identify and correct safety and health hazards.  The correction of such hazards helps to ensure the health and safety of miners and prevent mine accidents which disrupt production and impede commerce.  Thus, the public interest is served by enjoining the Defendants from preventing meaningful inspections by providing advance notice.

Although the Court has determined that an injunction is appropriate in this case, it is worth noting one final argument raised by the Defendants.  They characterize the relief sought here as a pre-enforcement injunction.  They assert that such relief is simply not available based on a single alleged violation of the Mine Act.  But, the relief sought here, although prospective, is not really pre-enforcement.  Citations were issued for violating the advance notice provision of the Mine Act.  While those citations are being contested, the fact that they were issued seems to move this matter beyond the realm of pre-enforcement.  To be sure, the relief sought here would enjoin future violations of the Act.  That, however, is precisely what the statute permits.

Section 818(a)(1) does not mandate injunctive relief based only on probable violation of

the Act. It does, however, specifically authorize the Secretary to seek injunctive relief whenever an operator or his agent interferes with, hinders, or delays the Secretary in carrying out her obligations under the Act. As noted previously, Section 818(a)(1) contains no requirement of repeated or habitual violations. Thus, the injunctive relief permitted by this Section is, by its very nature, almost always going to enjoin future conduct.

In her supplemental memorandum, the Secretary cites a case discussing prospective injunctions in an analogous situation. In *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654 (6th Cir. 1994), the Sixth Circuit emphasized that prospective injunctions under the Fair Labor Standards Act serve a remedial, not a punitive purpose:

> The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations. Prospective injunctions are essential because the cost of noncompliance is placed on the employer, which lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance. The imposition of an injunction is not punitive, nor does it impose a hardship on the employer "since it requires him to do 'what the Act requires anyway – to comply with the law.'"

*Id.* at 656.

The same analysis applies with equal force to this case. The Congress has determined that ensuring the health and safety of miners is the first priority of all in the coal or other mining industry. *See* 30 U.S.C. § 802(a). To further those ends, Congress mandated routine inspections of mines. Recognizing the ease with which many safety or health hazards may be concealed, Congress prohibited advance warning of any inspections. It also permitted the Secretary to seek injunctive relief for violations of these provisions. Like those issued under the FLSA, prospective injunctions under the Mine Act serve a remedial, rather than a punitive purpose. Enjoining future violations of the Mine Act effectuates general compliance with the

12

Congressional policy of ensuring the health and safety of miners through meaningful inspections. Similarly, the imposition of an injunction under the Mine Act is not punitive, nor does it impose a hardship on the mine and its employees since it only requires them to do what the Act requires anyway – to comply with the law. Nonetheless, the Defendants contend that if the Court grants the requested injunction, the parties will be back in court on a weekly basis. But, that is simply not the case. This matter will only be back before the Court if the Defendants violate the Mine Act and this Court's Order by giving advance notice of inspections.

## III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.  The Plaintiff's Motion for a Preliminary Injunction [R. 2] is **GRANTED**.

2.  The Plaintiff's Motion for Leave to File Memorandum [R. 13] is **GRANTED**.

3.  Within fourteen (14) days from the date of this Order, the Plaintiff shall **SHOW CAUSE** as to why the individually named Defendants, Benjamin Bennett, George Bennett, and David Partin, should not be dismissed from this action.

4.  Within thirty (30) days from the date of this Order, the parties shall file a status report, jointly if agreement can be reached, advising the Court of the status of the contested citations before the Review Commission, and proposing a schedule for this case and/or requesting a conference with the Court to formulate such a schedule.

5.  A separate Order describing the parameters of the preliminary injunction shall be entered contemporaneously herewith.

This the 27th day of May, 2010.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge